IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| METROPLEX COMMUNICATIONS, INC., on behalf of itself and all other similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 22-cv-1455-SMY ) |
| vs. | ) ) |
| META PLATFORMS, INC., | ) ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Metroplex Communications, Inc. ("Metroplex"), a local advertising company, brings this putative class action against Defendant Meta Platforms, Inc. ("Meta") asserting claims of unfair competition on behalf of itself and a class of similarly situated entities. Meta moves to compel arbitration and stay litigation (Docs. 33, 43), which Metroplex opposes (Doc. 39). Meta also moves to dismiss Metroplex's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim (Docs. 38, 49), which Metroplex opposes (Doc. 46).

The Court held a hearing on the motions on April 18, 2023 (Doc. 66).[1] For the following reasons, the motions are all **DENIED**.[2]

## Background

Meta, formerly known as Facebook, Inc., generates revenue by selling digital advertisements for placement on the Facebook platform. Metroplex is a local advertising

---

[1] District Judge David W. Dugan conducted the hearing but recused himself shortly afterward (Doc. 65).
[2] The motions for leave to file supplemental authority (Docs. 71, 74) are **GRANTED.** The Court also considered the previous supplements (Docs. 53, 61).

company. According to Meta, Metroplex manages multiple Facebook pages to promote its local media properties, including its AdVantage news site and 107.1 FM radio station. Meta contends that Metroplex has advertised on Facebook dozens of times in the last three years. Thus, according to Meta, Metroplex is an advertising purchaser. Metroplex disputes this assertion and contends that it is one of Meta's competitors.

Metroplex sells and places digital and targeted advertisements on its local news website, advantagenews.com, the "Best of Edwardsville" website, radio advertisements for its radio stations 94.3 FM, 107.1 FM, and 1570 AM, and print advertisements that are placed in local newspapers and in the "Best of Edwardsville" magazine. Metroplex also develops tools and systems for managing and optimizing advertising campaigns for businesses.

In the First Amended Complaint, Metroplex alleges that Meta drew buyers away from its local news outlets by (1) using the word "people" in statements related to advertising on Meta and (2) overestimating the number of people on Meta's apps and reachable by ad campaigns, and contends that Meta's users were "not actually people," because some accounts were false and some people have more than one account. It asserts the following claims: Count I - Violation of the Lanham Act (Meta's false and/or misleading statements deceived or had the tendency to deceive); Count II - Violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Meta's representations and advertising of its goods and other conduct created a likelihood of confusion or misunderstanding that affected the Illinois Subclass).

## Discussion

### Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim
### (Doc. 38)

#### *Lack of Subject Matter Jurisdiction*

Because Meta challenges whether Metroplex has standing to bring this lawsuit, the Court must first determine whether it has subject matter jurisdiction under Rule 12(b)(1). *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.,* 660 F.3d 988, 997 (7th Cir. 2011) (a court must have subject matter jurisdiction to stay a case pending arbitration under § 3 of the FAA). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.,* 320 F.3d 698, 701 (7th Cir. 2003). However, if a defendant challenges standing as a factual matter, the Court may look beyond the allegations in the complaint and view whatever evidence has been submitted to determine whether subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009). There is "no presumptive truthfulness attache[d] to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Id*. The plaintiff bears the burden of establishing standing. *See Reid v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

Meta challenges the standing of Metroplex to bring this lawsuit, primarily based on Lanham Act precedent. Section 1125(a) of the Lanham Act authorizes suit by "any person who believes that he or she is likely to be damaged by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014); 15 U.S.C. § 1125(a). To maintain a statutory cause of action under the Act, a plaintiff must allege injuries within the "zone of interests" protected by the statute and proximately caused by the defendant's violation of the

Act. 572 U.S. at 129. Plaintiffs are considered within the "zone of interests" if they "allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. For proximate cause, Plaintiffs must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which occurs "when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Here, Metroplex alleges that Meta competes directly with Metroplex for the same customers and Meta's false or misleading statements were material to advertisement buyers. Although Meta argues that Metroplex should be required to show "lost sales data," this can be plausibly inferred by the allegations that Metroplex and Meta compete directly for the same customers. Metroplex also alleges that Meta's false or misleading statements led to diversion of sales from Metroplex to Meta and damaged Metroplex's reputation. These allegations are sufficient to meet the standing requirements of the Lanham Act. See *Lexmark*, 572 U.S. at 137. Therefore, the motion to dismiss for lack of subject matter jurisdiction is denied.

### *Failure to State a Claim*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Meta argues that Metroplex fails to state a claim under the Lanham Act because it does not sufficiently allege a false or misleading statement likely to influence advertisers' ad buying, and any such allegations lack the particularity required by Rule 9(b). Meta notes that most of the challenged statements are not advertising – they are numerical estimates taken from Meta's SEC

filings or provided to individual advertisers for particular ad campaigns, and generic references to "people" on informational webpages. But "[w]hether [Lanham Act] claims must be pled in accordance with Rule 9(b) is not settled within the Seventh Circuit." *Towada Audio Co. v. Aiwa corp.,* No. 18-CV-4397, 2019 WL 1200748, at *8 (N.D. Ill. Mar. 14, 2019). Nevertheless, Metroplex has satisfied Rule 8 and 9(b) by pleading the who (Meta); what (false/misleading statements about Meta's own goods, services, or commercial activities in commercial advertising or promotion), and when (ongoing for years and continuing); and where and how (via Meta's website and public filings incorporated on its website). *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (Under Rule 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud," which requires them to plead the "who, what, when, where, and how" of the fraud), quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

Meta cites to *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), to argue that no reasonable consumer could be deceived considering other information available on Meta. *Bell*, 982 F.3d at 475. But Meta's alleged disclaimers or qualifying statements in SEC filings or in icons that led to popup windows do not cure the challenged statements, which Metroplex claims are false. The court in *Bell* declined to dismiss a claim alleging a misleading label on the front of a product even if the back label had clarifying language, finding "what matters most is how real consumers understand and react to the advertising." *Id.* at 476. Also, as noted in *Bell*, the meaning of a given advertisement is a question of fact that should generally not be decided on a motion to dismiss. *Id.* at 479.

Meta's arguments center around the substance of what counts as a person for advertising purposes. Metroplex alleges specifically that Meta allegedly inflates audience estimates and reach

5

metrics and such audience size figures can be over 30% of the actual number (Doc. 31 at ¶¶ 108-167, 187).  Thus, it is plausible that consumers of advertisements would be deceived.  Dismissal on this basis at this juncture is inappropriate.

Next, Meta contends that the Metroplex's IUDTPA claim fails for the same reasons and because the alleged conduct did not occur primarily and substantially in Illinois.  The IUDTPA does not expressly confine its application to events or circumstances arising in Illinois.  However, a "long-standing rule of construction in Illinois . . . 'holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005).  As such, non-residents can only bring a claim under the IUDTPA if the alleged wrongful conduct was "primarily and substantially in Illinois." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 860 (N.D. Ill. 2011).  Courts consider several factors to determine whether wrongful conduct occurred "primarily and substantially" in Illinois, including: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009), citing *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005).

Metroplex, an Illinois company, alleges it was damaged as a competitor in the Edwardsville and greater Metro East region in Illinois.  Because Metroplex primarily advertised to Metro East residents about Illinois events, Meta's allegedly misleading conduct occurred primarily in that location.  Therefore, the IUDTPA claim survives this motion to dismiss.

Meta further argues that Metroplex has failed to state a claim for injunctive relief by not alleging an inadequate remedy at law.  But ongoing unfair competition, which Metroplex has

6

sufficiently alleged, can cause irreparable harm for which there is "no adequate remedy." *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) ("Lanham Act violations are presumed to be irreparable"). The claim for injunctive relief will not be dismissed at the pleading stage.

Finally, Meta contends that the statute of limitations on both claims is three years, and consequently, the allegations in the First Amended Complaint predating July 8, 2019 are untimely. The running of the statute of limitations is an affirmative defense, and "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). For that reason, courts generally deny motions to dismiss premised on a complaint's untimeliness when there is "*any* set of facts that if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).

The Lanham Act does not contain an express statute of limitations. In that circumstance, the Supreme Court has indicated that courts considering the timeliness of federal claims should apply the statute of limitations from the most analogous state statute. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so"). Generally, courts in this district have applied the Illinois Consumer Fraud Act's ("ICFA") three-year limitations period to Lanham Act claims. See *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793–94 (7th Cir. 2002).

Metroplex's claims cannot be dismissed at the pleading stage because of factual disputes raised as to the false advertising and when Metroplex knew about them. Moreover, under the continuing violation doctrine, when a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease, and

7

it cannot be determined at this juncture. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). See also, *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *5 (N.D. Ill. Sept. 22, 2014). Accordingly, the Court will not dismiss any Lanham Act claims for timeliness at this juncture.

The ICFA's three-year statute of limitations has also been applied to IUDTPA claims. *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.,* No. 02 C 5096, 2003 WL 21982141, at *13 (N.D.Ill. Aug. 20, 2003). For the reasons mentioned above, the Court will not dismiss these claims for timeliness at this time.

**Motion to Compel Arbitration and Stay the Case (Doc. 33)**

Meta contends that two of Metroplex's local news outlets – AdVantage news and 107.1 FM radio station – had Facebook pages, managed by Metroplex, that purchased dozens of ads and that the person/entity purchasing those ads accepted the terms of service when the ads were purchased. Metroplex argues that even if it is bound by the Commercial Terms, the claims it asserts in its capacity as a Meta competitor fall outside the scope of the agreement.

*Commercial Terms of Service – Arbitration Clause*

Although the parties provide several versions of the Commercial Terms of Service, the relevant operative language is as follows:

**5. Disputes:**

    **b. Commercial Claims:** Section 5.c and 5.d below apply to any claim, cause of action, or dispute that arises out of or relates to any access or use of the Meta Products for business or commercial purposes ("Commercial Claim") between you and Meta.

    **c. U.S. Commercial Claims:** If you reside in the United States or your business is located in the United States:

        i. You agree to arbitrate Commercial Claims between you and Meta Platforms, Inc. This provision does not cover any commercial claims relating to violations of your or our intellectual property rights, including, but not limited to, copyright infringement, patent

      ii.    infringement, trademark infringement, violations of the Brand Usage Guidelines, violations of your or our confidential information or trade secrets, or efforts to interfere with our Products or engage with our Products in unauthorized ways (for example, automated ways). If a Commercial Claim between you and Meta Platforms, Inc. is not subject to arbitration, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo county, and that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

      ii.    We and you agree that, by entering into this arbitration provision, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action. THE PARTIES AGREE THAT EACH MAY BRING COMMERCIAL CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING. You may bring a Commercial Claim only on your own behalf and cannot seek relief that would affect other parties. If there is a final judicial determination that any particular commercial Claim (or a request for particular relief) cannot be arbitrated according to the limitations of this Section 5.c, then only that Commercial Claim (or only that request for relief) may be brought in court. All other Commercial Claims (or requests for relief) will remain subject to this Section 5.c. The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision.

(Doc. 33-12, p. 3).

The Federal Arbitration Act ("FAA") mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). Arbitration should be compelled under the FAA when "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citing 9 U.S.C. §§ 3–4).

Here, the parties disagree as to whether this lawsuit is a "dispute within the scope of the arbitration agreement." Under Illinois law, parties "are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Liu v. Four Seasons Hotel, Ltd.,* 138 N.E.3d 201, 206 (Ill. App. Ct. 2019). When an arbitration clause's language is broad and it is unclear whether the dispute is

within the agreement's scope, "the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr,* 530 N.E.2d 439, 447-48 (Ill. 1988). On the other hand, when an arbitration clause is "clearly limited in its scope," a court should resolve the arbitrability question. *United Cable Tele. Corp. v. Nw. Ill. Cable Corp.,* 538 N.E.2d 547, 550 (Ill. 1989).

This Court finds that the arbitration clause in question is limited in scope and that the dispute herein is outside its scope. Metroplex alleges it was damaged as a competitor, and not as a user, because advertisers bought advertising space on Facebook instead of with Metroplex. Moreover, Meta concedes that the arbitration agreement applies only to "commercial users" of the Meta platform – "Meta's Commercial Terms require commercial users (including advertisers) to arbitrate any commercial dispute with Meta" (Doc. 33-1, p. 6). As Metroplex correctly notes, because it asserts a claim as a competitor of Meta, the claim does not "[arise] out of or relates to any access or use of the Meta Products for business or commercial purposes," but is rather a lawsuit that would exist even if Metroplex had never entered into any agreements with Meta. 9 U.S.C. § 2 (only permitting "to settle by arbitration a controversy thereafter arising out of such contract or transaction").

The language of the instant arbitration clause does not express an intent to arbitrate any dispute that could ever arise between the parties, but only those relating to the consumer's use of the Meta products ("arises out of or relates to any access or use of the Meta Products for business or commercial purposes ("Commercial Claim") between you and Meta"). As such, Meta's request to compel arbitration and stay the case will be denied. See *Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) ("to include Mr. Rosenblum's claims within the scope of this arbitration clause would expand the operation of that

clause beyond its express terms and beyond the intent of the parties"). See also *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264 (S.D.N.Y. 2021) (service agreement could not be used to mandate arbitration in putative privacy class action where claims lacked any nexus to a service agreement between cable television company and its subscribers). Accordingly, Meta's request to compel arbitration will be denied.

## Conclusion

For the foregoing reasons, Meta's motion to compel arbitration and to stay the case (Doc. 33) and motion to dismiss under Rules 12(b)(1) and 12(b)(6) (Doc. 38) are **DENIED**. The case will be set for a status conference by separate order.

**IT IS SO ORDERED.**

**DATED: March 5, 2024**

**STACI M. YANDLE**
**United States District Judge**